## SECURITY BEN. ASS'N v. WOODS.
### No. 1414—6200.

Commission of Appeals of Texas, Section B.
March 15, 1933.

Ward & Ward, of Houston, and A. W. Fulton, of Topeka, Kan., for plaintiff in error.

King, Wood & Morrow and H. E. Cox, all of Houston, for defendant in error.

LEDDY, Judge.

Plaintiff in error is a fraternal beneficiary association operating under a lodge system, with a ritualistic form of work, organized and conducted without profit and solely for the mutual benefit of its members and their beneficiaries. It was incorporated under the laws of Kansas, and for many years has been licensed to transact business in this state under the provisions of the laws regulating the operation of such societies.

In 1919 plaintiff in error issued to John W. Woods a benefit certificate providing for the payment, upon his death, of the amount stated therein to his wife, provided that at such time he were a member of the order in good standing. The assured was required by the terms of the certificate to pay all monthly assessments and dues on the 1st day of each month; he being given the entire month in which to make payment. If the payment for any month was not paid on or before the last day of the month in which due, he became, without notice, automatically suspended from the society, and all rights under the certificate were forfeited and could not be restored until he had complied with the laws of the association governing reinstatement of suspended members.

The undisputed evidence in this case shows that Woods failed to pay the assessments and dues payable by him for the month of August, 1928, on or before the last day of the month, and he thereby became suspended on August 31. He also failed to pay the dues and assessments for September, October, and November. On or about the 10th day of December he made payment to the financier of plaintiff in error's local council of all dues and assessments which would have been paid had he remained in good standing. He continued to pay the assessments for each subsequent month as they became due up to the time of his death, which occurred in April, 1929.

Defendant in error, the wife of Woods, and the beneficiary under said certificate; brought this suit against plaintiff in error to recover the amount stipulated in such certificate. She was awarded judgment for the amount

of the certificate, less certain deductions, based upon findings of a jury in answer to special issues submitted to them. Upon appeal to the Court of Civil Appeals, the judgment of the trial court was affirmed.

It is an admitted fact that on the last day of August, 1928, and thereafter during the entire life of the said Woods, he was not in sound bodily health.

The laws of the association provided that each member who had been suspended for nonpayment of an assessment should be reinstated only in accordance with the constitution and by-laws of the association. These laws were, by the terms of the certificate held by Woods, expressly made a part thereof.

Woods' status as a member of this organization at the time of his death is dependent upon the fact as to whether he complied with its laws governing the reinstatement of suspended members. The constitution and by-laws of the order provides that, where a member has been suspended for less than 60 days, he cannot be reinstated unless he is in good health at the time he pays all arrearages of dues and assessments, with the further provision that his payment of such dues is a warranty as to his good health at that time.

■ A different provision was made for members who were under suspension for more than 60 days at the time of attempted reinstatement. Reinstatement under such circumstances is controlled solely by the provisions of section 115 of the society's by-laws, which reads as follows:

"*How Reinstated After Sixty Days.* Any member * * * whose beneficiary certificate has been suspended for more than sixty days and less than six months, may be reinstated to beneficial membership upon providing such proof of sound bodily and mental health as may be required by the National Executive Committee and the approval thereof by the National Medical Director or National Executive Committee. Notice of such approval shall be sent by the National Secretary to the Financier of the local council and to the applicant for reinstatement. Reinstatement shall take place only after the approval of the application as hereinbefore set forth and the payment by the member to the Financier of his council of all assessments and dues accruing subsequent to the suspension of the certificate, including the assessment and dues for the month in which reinstatement takes place. All National Council funds collected for the reinstatement of suspended members shall be forwarded with the first report thereafter to the National Secretary by the Financier together with the report of such reinstatement."

It will be noted that this section of the by-laws of the society does not contain any stipulation to the effect that a member shall not be reinstated unless he is in good health at the time. Under this section a suspended member is required to do two things as a prerequisite to his reinstatement: First, to pay all dues and assessments accruing subsequent to the suspension of his certificate, including the assessments and dues for the month for which reinstatement takes place; and, second, he must make such proof of sound bodily and mental health as may be required by the national executive committee, which proof is to be passed upon and approved by said committee or the national medical director. Under this provision plaintiff in error had the right to require Woods to sign a certificate reciting that he was in good health or that he furnish a medical certificate of that fact, or it might demand such other reasonable proof as it might deem advisable. On the other hand, it might decline to require any proof as to the applicant's physical condition. It was of course the duty of such committee to communicate to a member who had been suspended for more than 60 days the character of proof it required as a condition precedent to the reinstatement of his certificate. After the suspended member had been informed of the requirement made by the committee, he would be compelled to comply therewith in order to restore himself to good standing in the order.

■ Under an unchallenged jury finding, plaintiff in error did not exact of Woods any proof as to the condition of his health at the time of the attempted reinstatement. He paid all dues and assessments required for suspended members, and continued to pay current dues and assessments up to the date of his death.

It is true that plaintiff in error's national executive committee, acting under authority contained in section 115 of its by-laws, sought to require Woods to sign an application for reinstatement certifying that he was in good health. This requirement was communicated to plaintiff in error's local financier, but such officer failed to notify Woods that any such condition had been imposed as a prerequisite to the right to reinstate his certificate. The health certificate forwarded by plaintiff in error to its local officer was returned by that official with Woods' purported signature. This was found by the jury to be a forgery, with the further finding that this application for reinstatement was never at any time presented to Woods, or any one acting for him, for execution. Had plaintiff in error's local officer informed Woods of the requirement of the national committee for a health certificate, it would have been his duty to have executed the same, and, if he failed to do so, it would have operated to prevent the reinstatement of his certificate.

Plaintiff in error insists there was no valid

reinstatement of Woods' certificate because under its by-laws no officer of any subordinate council was authorized or permitted to waive any provision of the laws of the association relating to the contract between the member and the association, and also because of the further provision that the association should not be bound by the acceptance of assessments and dues from suspended members who were not entitled to reinstatement in accordance with the laws of the association. In this connection a great deal is said upon the subject of waiver and estoppel. The right of Woods' beneficiary to recover under the certificate is not in any way dependent upon the existence of facts sufficient to constitute either waiver or estoppel. The recovery awarded the beneficiary under the policy is justified upon the proposition that Woods did all that was required of him to reinstate his certificate under the laws of the association. He was only required to pay all arrearages of dues and assessments up to the time of his reinstatement, and to furnish such proof of his bodily and mental health as might be required by plaintiff in error's national executive committee. It is undisputed that he complied with the requirement as to payment of all dues and assessments. The tender of these dues by him constituted an application for reinstatement of his certificate. Since plaintiff in error's national executive committee did not make known to Woods its action requiring the execution of a health certificate, payment of such dues and assessments operated as a reinstatement of his forfeited membership.

This is not a case where the constitution of a fraternal society requires a suspended member to be in fact in good health as a condition precedent to his right to reinstate. Under the provisions of section 115, it is clearly within the province of the national executive committee to permit a suspended member to be reinstated who is not in good health at the time he attempts to reinstate. The committee was clothed with full power to protect the society against reinstatement of suspended members not in good health by requiring them to make proof acceptable to it of the condition of the applicants' health at the time of reinstatement. If it fails to require any proof by a suspended member as to the condition of his health, the payment of the required dues and assessments would necessarily operate to reinstate such member, regardless of the condition of his health at the time.

■ Plaintiff in error insists that under section 115 it is contemplated that a health certificate should be exacted from a member who has been suspended for more than 60 days at the time he attempts to reinstate. This contention is based upon this language of

said section: "Reinstatement shall take place only after the approval of the application as hereinbefore set forth and the payment by the member to the financier of his council of all assessments and dues accruing subsequent to the suspension of the certificate," etc. The language, "after the approval of the application as hereinbefore set forth," can only have reference to the approval by the governing authorities of proof which has been furnished by the suspended member in compliance with the requirements of the national executive committee. If no proof has been required, there would be nothing for the committee or the medical director to approve.

■ It is undisputed that plaintiff in error's national governing body had notice of Woods' suspension for nonpayment of dues. It knew when he paid all arrearages of dues and assessments that he was doing so for the purpose of reinstating his forfeited membership. It therefore devolved upon it to notify Woods of the character of proof it required him to make as to his bodily and mental condition as a prerequisite for reinstatement. This it failed to do through neglect on the part of one of its subordinate officers. Certainly Woods cannot be held responsible for the negligence of plaintiff in error's local officer in failing to communicate to him the fact that a requirement for a health certificate had been made by the executive committee. While Woods was bound to take notice of any duty imposed upon him by the society's laws in connection with the reinstatement of his certificate, he was not required to take notice of any action which might be taken by the society's executive committee. The absolute duty devolved upon plaintiff in error to see that Woods had notice as to the character of proof it desired him to make in regard to the condition of his health. Since it did not notify him of any requirement whatever in this connection, and afterwards accepted his tender of all dues and assessments, it must be held that he fully complied with all requirements and that his certificate was therefore validly reinstated.

The by-laws of most fraternal societies contain a stipulation that a suspended member is not validly reinstated if he is not in fact in good health at the time he attempts to reinstate. The laws of the society in this case make such provision with reference to a member who seeks to reinstate within less than 60 days from the date of his suspension. No such requirement, however, is made by plaintiff in error's by-laws where the suspension has existed for more than 60 days at the time the reinstatement is attempted. In lieu of such provision, the laws of the society leave it to the discretion of its executive committee as to the nature of proof, if any, which shall be demanded from mem-

bers who have been suspended for more than 60 days. When such committee fails to make any requirement in this regard of a suspended member, his membership is reinstated by compliance with the only condition exacted; that is, the payment of all arrearages of dues and assessments.

The findings of the jury in connection with the undisputed evidence demanded the judgment entered by the trial court. We therefore recommend that the judgment of the Court of Civil Appeals affirming the judgment of the trial court be affirmed.

CURETON, Chief Justice.

Judgment of the Court of Civil Appeals is affirmed.